# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

## ***

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MICAH BRUNO,

    Defendant.

2:17-cr-00214-KJD-VCF

**REPORT AND RECOMMENDATION**

MOTION TO SUPPRESS [ECF NO. 60]

   Before the Court is Defendant Micah Bruno's Motion to Suppress.  (ECF No. 60).  For the reasons discussed below, Defendant's motion should be denied.

## BACKGROUND

   In this case, Defendant is charged with one count of uttering counterfeit obligations of securities.  (ECF No. 12).  Evidence supporting this charge, including a printer, bleached federal reserve notes, and credit cards with other individuals' names, were found by officers executing a search warrant  at 725 S. Hualapai Way, Apartment 2041 in Las Vegas.  (ECF No. 60 at 2; ECF No. 66 at 2).  Defendant now moves to suppress all evidence found in the apartment.  (ECF No. 60).  Based on the motion's briefing,[1] the facts in the case are as follows:

---

[1] It was not necessary for the Court to hold an evidentiary hearing on this matter.  "To mandate an evidentiary hearing…[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."  *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978).  As discussed further below, Defendant did not offer any proof in support of his motion.  In addition, there is no need for a hearing when, as in this case, "material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause."  *Id.*

In April 2017, a Confidential Source ("CS") that the FBI had previously used and determined to be reliable informed a United State Secret Service special agent that "he knew a black male who made counterfeit money and also wanted to 'get into the skimming game.'"  (ECF No. 66-1 at 3, 5).  The CS provided the black male's phone number, but did not know his name.  (*Id.* at 5).  The CS identified Defendant from a picture shown to him by the agent.  (*Id.*).

On June 12, 2017, the agent spoke with an identified accomplice of Defendant.  (*Id.* at 5-6).  The accomplice knew Defendant as "KEY," but showed the agent text messages from the same phone number identified by the CS.  (*Id.*).  That same day, the CS and Defendant met to discuss counterfeit federal reserve note purchases.  (*Id.* at 6).  On June 15, 2017, the CS and Defendant met again, along with an undercover agent, to complete the purchase.  (*Id.*).  That day, "the CS stated that on one occasion he picked up [Defendant] in front of the Tuscany Apartment complex at 725 S. Hualapai Way, and believed that [Defendant] lived somewhere in the complex."  (*Id.* at 5).

"On June 22, 2017 a grand, jury subpoena was served on the Tuscany apartment community manager requesting [Defendant]'s address."  (*Id.* at 7).  Defendant's name did not appear on any lease, but his phone number "was listed as the emergency contact for apartment 2041 under an alias of Michael Vienna. … The Tuscany apartment office and maintenance employees recognized [Defendant]'s photograph and stated he has been the sole occupant of 2041 since he moved into the apartment in April 2017."  (*Id.*).  On June 28, 2017, prior to another counterfeit purchase involving Defendant, the CS, and the undercover agent, a special agent observed Defendant "exit the front door [of] 725 S. Hualapai Way, Apartment 2041."  (*Id.* at 7-8).

On June 30, 2017, a United State Secret Service special agent obtained a search warrant for the apartment based on an affidavit containing the facts listed above.  (ECF No. 66 at 2; ECF No. 66-1).  Agents searched the apartment on July 3, 2017 and seized the items at issue in this motion to suppress. (ECF No. 66 at 2).

In his motion to suppress, Defendant argues that the search warrant affidavit contains three material misrepresentations or omissions. (ECF No. 60 at 6-9). First, Defendant asserts the phone number associated with Defendant was listed as a personal reference rather than emergency contact on the apartment lease. (*Id.* at 6-7). Second, Defendant argues that the "lease agreement clearly shows that the lease for unit 2041 began in January of 2017 and listed four individuals as occupants, none of which were" Defendant. (*Id.* at 7-8). Third, Defendant alleges that the CS was not credible and "the affiant knowingly omitted the fact that the CS has a criminal record for a crime of dishonesty." (*Id.* at 8-9). Defendant does not elaborate on what the crime of dishonesty consisted of or attach any proof of this assertion. In response, the Government argues that the search warrant affidavit contained accurate information and any omission would not be relevant to the Magistrate Judge's good cause determination. (ECF No. 66 at 3-6).

## DISCUSSION

The Fourth Amendment protects the right of people to be secure against unreasonable searches and seizures. Though the Fourth Amendment does not specifically preclude admission of evidence obtained in violation of its provisions, the courts enforce "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139-40 (2009).

"[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "Under *Franks*, a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017).

> To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that "the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]" and second, that the false or misleading

statement or omission was material, *i.e.*, "necessary to finding probable cause."

*Id.* (quoting *United States v. Martinez–Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)). "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

Defendant had failed to establish that the search warrant affidavit contains any misrepresentation regarding how the phone number associated with Defendant[2] was listed on the Apartment 2041 lease. Defendant asserts that the phone number associated with Defendant was listed as a personal reference rather than emergency contact. (*Id.* at 6-7). The Government disputes this assertion (ECF No. 66 at 3), and Defendant did not provide the Court with a copy of the lease in his motion to suppress. In addition, even had the affidavit mistakenly stated the number was an "emergency contact" rather than "personal reference," the Court finds that this misstatement would not be material. Information subsequently provided by the apartment complex's staff and surveillance of the apartment confirmed that Defendant was at the apartment. (ECF No. 66-1 at 7-8). The exact way that the number was listed on the lease would not have impacted the Magistrate Judge's probable cause determination.

In addition, Defendant failed to establish that the search warrant affidavit contains any misrepresentation regarding Defendant's occupation of the apartment. The affidavit accurately states that although Defendant's name "was not on a lease…[t]he Tuscany apartment office and maintenance employees recognized [Defendant]'s photograph and stated he has been the sole occupant of 2014 since he moved into the apartment in April 2017." (*Id.* at 7). The affidavit noted the difference between what

---

[2] Defendant asserts that "[t]here is also no information in the warrant to describe how the government came to know [Defendant]'s phone number and was therefore, able to come to the conclusion that it was the same as the one listed for Michael Vienna." However, the affidavit gives two separate sources for this information, one of which indicated that Defendant uses an alias in connection with the phone number. (ECF No. 66-1 at 5-6).

was on the lease and what individuals working at the apartments saw, and allowed the Magistrate Judge to make a probable cause determination based on this, and other, information.

Finally, Defendant has failed to establish that the CS was not credible or the affiant knowingly omitted the fact that the CS has a criminal record for a crime of dishonesty. Defendant's motion to suppress does not elaborate on what the alleged crime of dishonesty was or attach any proof of the crime's existence. Assuming, *arguendo*, that the CS has a criminal record for a crime of dishonesty, this alone is not fatal to a search warrant affidavit when there is "countervailing evidence to bolster the informant's credibility" such as whether the informant has previously given reliable information and whether the informant's testimony has been corroborated by independent evidence. *United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000). In this case, the CS had "been previously used by the Federal Bureau of Investigation and has been determined to be reliable." (ECF No. 66-1 at 3). In addition, the search warrant affidavit did not merely rely on the CS's testimony. The search warrant contained information from an accomplice of Defendant, employees of the apartment complex, and surveillance conducted by special agents. (*Id.* at 5-8). The information corroborated and expanded on the CS's testimony, establishing it to be reliable.

Because agents conducted a search of the apartment pursuant to a valid search warrant, the evidence seized should not be suppressed.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY RECOMMENDED that Defendant's Motion to Suppress (ECF No. 60) should be DENIED.

DATED this 20th day of March, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE